HAMILTON, Circuit Judge,
concurring.
I join fully Judge Posner’s opinion for the court affirming the denial of the insurers’ motion to intervene as untimely. I write separately to note my agreement with the district court’s alternative but more important holding, which Judge Pos-ner’s opinion acknowledges but does not actually resolve: the insurance companies lacked the sort of interest in the ease that would justify mandatory or permissive intervention.
Even if the insurers had sought to intervene back in 2009, the district court said, intervention still would have been denied. CE Design Ltd. v. King Supply Co., 2012 WL 2976909, at *13-15 (N.D.Ill. July 20, 2012). Having denied coverage for both defense and indemnification, the district court reasoned, the insurers lacked an “interest in the property or transaction that is the subject of the action” needed to intervene as of right under Rule 24(a) and lacked “a claim or defense that shares with the main action a common question of law or fact” needed for permissive intervention under Rule 24(b). I agree.
The question is important because such disputes can arise any time a liability insurer denies coverage. The world is a dangerous and litigious place. People and businesses buy liability insurance in large part for peace of mind — the knowledge that if one is sued, the insurer will provide a legal defense and will indemnify for a covered loss up to the policy limits.
When an insurer breaches its duty to defend or indemnify its insured, it’s not just any breach of contract. An insurer’s breach abandons its insured and deprives it of the peace of mind it has bought. Moreover, most contract law assumes that the victim of a seller’s breach can “cover” for the breach by buying a substitute product or service. That assumption does not apply to a liability insurer’s breach. There is no market for insuring risks already realized. Once a claim for potential loss is known, no other insurer will step up to provide coverage at a reasonable premium. The abandoned insured is left truly on its own.[1]
The premise of these insurers’ motion to intervene, whether timely or not, is that *728 insurers who might later be found to have breached their coverage contract need to intervene to protect themselves from a settlement they might be required to pay without having participated in the deal. The insurers say they are either entitled or should be permitted to join the underlying tort suit to try to derail a settlement that their insured has reached to try to save it from the worst consequences of.the insurers’ breach.
The district court here correctly rejected that premise. Insurers gain an interest in an underlying tort suit — and re quire protection from a settlement in that case— if and only if they lose the coverage issue (typically in a separate suit) and are therefore on the hook to indemnify the insured.
I realize, of course, that it seems unlikely there was an actual breach in this case. The Illinois trial court has found the insurers had no duty to cover King Supply in this case, and the policy language seems pretty clearly in their favor. But the motion to intervene, whether timely or not, was designed to protect the insurers if and only if they ultimately lose the coverage issue. For purposes of the intervention issue, we need to assume for now that the insurers will be found to have breached.
The First Circuit rejected a similar effort by insurers denying coverage to intervene to challenge a settlement made by their insured in Travelers Indemnity Co. v. Dingwell, 884 F.2d 629, 638-41 (1st Cir.1989). The court held that the insurers did not have the sort of interest in the underlying tort case that would allow them to intervene either by right or by permission to challenge the settlement. The court reasoned that when an insurer denies coverage, its interest in the underlying tort case is entirely contingent on whether the insurer was within its rights to deny coverage. A court deciding coverage might determine that the liability was not covered, so permitting intervention to argue about the validity of any settlement in the tort case would “grant the insurer a double bite at escaping .liability.” Id. at 639 (citation omitted).
The First Circuit’s opinion in Travelers is careful, thorough, and persuasive, and we should follow it. If anything, its reasoning applies with even greater force in this case where the insurers did not agree,, as they did in Travelers, to pay for the tort defense. Consistent with Travelers on the lack of an interest to support intervention, see also Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 874-76 (2d Cir.1984) (affirming denial of insurer’s motion for intervention as of right and by permission in underlying tort case in effort to clarify whether adverse judgment would be covered loss or not); Cincinnati Ins. Co. v. Young, 852 N.E.2d 8, 13-16 (Ind.App.2006) (reversing grant of insurer’s motion under analogous Indiana procedure to intervene to appeal insured’s liability where coverage was contested).[2]
Adopting the reasoning found in these cases, the district court correctly found that the motion to intervene would have been denied even if it had been timely.

. For that reason, courts generally provide fairly light scrutiny to settlements like this one, in which the abandoned insured makes a deal with the injured plaintiffs for a modest payment from the insured with perhaps much more to come from the insurer, typically by means of a covenant not to execute or an assignment of available insurance proceeds to the plaintiffs, if coverage can be shown. See, e.g., Home Federal Savings Bank v. Ticor Title Ins. Co., 695 F.3d 725, 736 (7th Cir.2012); Cincinnati Ins. Co. v. Young, 852 N.E.2d 8, 14 (Ind.App.2006); Midwestern Indemnity Co. v. Laikin, 119 F.Supp.2d 831, 838-42 (S.D.Ind. 2000); Frankenmuth Mutual Ins. Co. v. Williams, 690 N.E.2d 675, 679 (Ind.1997); United Services Automobile Ass’n v. Morris, 154 Ariz. 113, 741 P.2d 246, 253-54 (1987); Miller v. Shugart, 316 N.W.2d 729, 733-35 (Minn.1982); Restatement (Second) of Judgments § 57 (1982). For the Illinois standard regarding the reasonableness of such settlements, see Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois, 203 Ill.2d 141, 271 Ill.Dec. 350, 785 N.E.2d 1, 14 (2003).

. The Fifth Circuit took a different approach in Ross v. Marshall, 426 F.3d 745, 757-60 (5th Cir.2005), holding that an insurer that had defended a tort case under a reservation of rights was entitled to intervene in the underlying tort case to appeal after those parties had settled with an assignment of defendant's insurance coverage to plaintiffs. In that case, however, the district court had also held that the loss was covered under the insurance policy. Id. at 750. That holding in my view gave the insurer a direct interest in the tort case, distinguishing the case from Dingwell and Restor-A-Dent.